**WO**                                                                                                      SVK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Walter C. Goedecke, | No. CV 06-2734-PHX-JAT (LOA) |
| Plaintiff, | **ORDER** |
| vs. | |
| Dr. Vinivan, et al., | |
| Defendants. | |

Plaintiff Walter C. Goedecke, who is confined in the Arizona State Prison Complex (ASPC) in Florence, Arizona, filed this *pro se* civil rights action against various officials of the Arizona Department of Corrections (ADC).[1] The Court ordered Defendants Vinluan[2] and Schriro to answer the Complaint. Defendants move for summary judgment.[3] (Doc. #22.) The motion is fully briefed. (Doc. ##28, 30.)

The Court will grant the motion and terminate the action.

///

///

---

[1] On screening pursuant to 28 U.S.C. § 1915A, the Court dismissed the Medical Staff at the ADC Rast Unit as a Defendant. (Doc. #3.)

[2] Although the caption is "Vinivan," the correct spelling is Vinluan.

[3] The Court issued a Notice pursuant to Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998) (*en banc*). (Doc. #24.)

**I.     Background**

In his Complaint, Plaintiff alleged that in September 2005, while housed in ADC's Rast Unit, Dr. Vinluan examined Plaintiff and determined that he had a lump in his prostate. (Doc. #1.) Dr. Vinluan ordered additional blood testing. Plaintiff alleged that he never learned the results of those blood tests and the doctor ordered no follow-up. Plaintiff was subsequently transferred to the ADC's Santa Rita Unit. Plaintiff was examined by a doctor in March 2006, and was told that his prostate was enlarged. The doctor asked him if he had undergone any blood tests, and Plaintiff told him that he had had blood tests but was unaware of the results. The doctor advised Plaintiff of the results. Plaintiff saw a urologist in August 2006, and was informed that he had prostate cancer. Plaintiff also alleged that he wrote to ADC Director Dora Schriro to explain his situation and to attempt to receive some assistance in treating his cancer. Plaintiff had his prostate removed in December 2006. (Doc. #22 at 2.)

**II.    Legal Standards**

   **A.    Summary Judgment**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party who must demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-

moving party. Id. at 250; see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). Rule 56(e) compels the non-moving party to "set out specific facts showing a genuine issue for trial" and not to "rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The opposing party need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). However, Rule 56(c) mandates the entry of summary judgment against a party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial. Celotex, 477 U.S. at 322-23.

When considering a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. But if the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. Id. at 249-50.

### B.     Medical Care

To prevail on a claim under the Eighth Amendment for medical care, a prisoner must demonstrate "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). A plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) that the defendant's response was deliberately indifferent. Jett, 439 F.3d at 1096 (citations omitted). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; the official must both be aware of facts from

which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. Jett, 439 F.3d at 1096. It may be shown when an official denies, delays, or intentionally interferes with treatment or by the way that a medical professional provides care. Id.

But a mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). Plaintiff must show the delay in treatment was harmful. Id. And claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983. Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980). Inadequate treatment due to malpractice or even gross negligence does not constitute an Eighth Amendment violation. Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. (Id.)

### III.    Motion for Summary Judgment

#### A.    Parties' Contentions

In support of their motion, Defendants submit medical records. They assert that in May 2005, Plaintiff refused a prostate screening but he asked for one in October 2005. (Def. Statement of Facts (DSOF) ¶¶ 1-2.) He was seen by Vinluan, and a blood test was done. (Id. ¶ 2.) On February 15, 2006, a PSA (prostate) screening was ordered by Dr. White, and on February 23, Dr. Whaley noted a lab report indicating that Plaintiff's PSA level was 13.3. (Id. ¶ 4.) On March 9, Dr. Whaley noted that Plaintiff's prostate was enlarged and prescribed a urology consult. (Id. ¶ 5.) On June 8, Plaintiff submitted a Health Needs Request (HNR) asking about the status of his appointment with a urologist. (Id. ¶ 6.) In the meantime, Dr. Whaley submitted an outside consult request on June 7, which was approved on June 13. (Id. ¶ 7.) Plaintiff was seen by Dr. Kuo, a urologist on June 7; his consultation report stated

"Show PSA dated 10/05 of 13.4. Repeat PSA dated 02/222/06 [sic] was 13.3." (Id. ¶¶ 8-9.)[4] The doctor ordered a needle biopsy and ultrasound, which was done in August; the prostate was cancerous. (Id. ¶ 10.) After determining that the cancer had not spread throughout Plaintiff's body, the doctor recommended surgery. (Id. ¶ 11, Attach. 11.) Plaintiff had a prostatectomy on December 13, 2006. (Id. ¶ 12.)

Defendants argue that because Plaintiff's June HNR mentioned that his PSA level was 13, Plaintiff obviously knew of the results of PSA tests ordered by Vinluan. (Doc. #22 at 4.) They also maintain that because the two PSA tests—October 2005 and February 2006—had almost the same test results and because the cancer had not spread by November, the delay between the two tests caused no harm. (Id.)

Plaintiff asserts that Vinluan performed a prostate check and that the lab results showed a PSA level of 13.4.[5] (Doc. #28 at 2.) Although Vinluan noted that Plaintiff was scheduled to be seen in November 2005, Plaintiff was never called. (Id.) Plaintiff was then transferred from the Rast Unit on November 29, 2005. (Id.) Plaintiff did not see Dr. Whaley until February 23, 2006. (Id.) Plaintiff asserts that Vinluan knew of Plaintiff's lab result and failed to treat him or inform him of the result or to inform the doctors at the next unit of Plaintiff's serious health needs and Vinluan did not follow up. (Id. at 3.) Plaintiff asserts that he knew of his PSA results by June 2006 because Dr. Whaley told Plaintiff in February. (Id. at 4.) Plaintiff also asserts that Defendants repeatedly delayed his medical treatments because they had to be approved by ADC, that he was in pain, and that he is still in pain because his cancer returned in July 2007. (Id. at 5.) He contends that he had to undergo radiation treatments and has experienced serious weight loss. (Id. at 5.)

In their reply, Defendants argue that Plaintiff concedes that he knew of the elevated PSA level in February and, therefore, he must submit evidence that his delay in knowing the

---

[4]These dates do not appear consistent, but these are the facts represented by Defendants. In addition, the Court notes that Exhibit Med. 130 does not support the assertion that Dr. Whaley submitted a consult request on June 7.

[5]The Court notes that Plaintiff did not sign either the Complaint or the response to Defendants' summary judgment motion. (Doc. ##1, 28.)

- 5 -

test result, if any delay existed, was harmful. (Doc. #30 at 2.) They claim that Plaintiff was hospitalized with a different medical problem in October 2006 and did not complain of pain. (Id.) They reiterate that there was no harm because the February 2006 test result was the same as the one before it and doctors did not see a problem in waiting until December 2006 to operate. (Id.) Finally, Schriro argues that Plaintiff submits no evidence that he wrote to her and the only documentation regarding this matter is a grievance submitted to her and dated December 6, 2006. (Id., Ex. B.)

### 2. Analysis

The Court will grant summary judgment because Defendants offer evidence that any delay in treatment of Plaintiff's prostate condition caused no harm, and Plaintiff fails to provide evidence disputing this material fact.

First, the Court must consider whether Defendants have submitted admissible evidence in support of their motion. Defendants submit what purports to be medical records, but they provide no declaration or affidavit of authentication. A trial court can consider only admissible evidence in ruling on a motion for summary judgment. See Fed. R. Civ. P. 56(e). "Authentication is a 'condition precedent to admissibility. . . .'" Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002). The Ninth Circuit has repeatedly held that unauthenticated documents cannot be considered on summary judgment. Id. (citations omitted). "The requirement of authentication . . . is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901.

Because Defendants provide no declaration or affidavit of authentication, the medical records are not authenticated under Federal Rules of Evidence 901(b)(1) or 902(11). But evidence may also be authenticated by "[a]ppearance, contents, substance, . . . taken in conjunction with circumstances." Fed. R. Evid. 901(b)(4); see Orr, 285 F.3d at 774 (holding that a deposition excerpt could not be authenticated by reviewing its contents because the deponent's name was not mentioned in the excerpt).

The better practice is to provide a declaration or affidavit to authenticate medical records. The Court finds, however, that the records are authenticated under Rule 901(b)(4)

- 6 -

because each page contains Plaintiff's name and because the dates of the entries and the representations generally coincide with Plaintiff's dates and representations. Moreover, Plaintiff does not object to the documents, see Orr, 285 F.3d at 773 n.5 (party did not object and thus waived challenge to evidentiary rulings), and in at least one instance, apparently relies upon them.[6]

Viewing the evidence in the light most favorable to Plaintiff, even though a jury could reasonably find that Vinluan knew of a serious medical condition and did not inform Plaintiff of that condition or follow up with a physician at the facility to which Plaintiff was transferred, there is no evidence that Plaintiff was harmed as a result of a delay in treatment that may have been caused by Vinluan's conduct. Defendants submit medical records that clearly show that Plaintiff's cancer did not spread beyond his prostate. (Doc. # 23, Attach. 11.) Thus, Defendants demonstrate that Plaintiff was not harmed by any delay that may have been caused by Vinluan. See Shapley, 766 F.2d at 407. And Plaintiff does not dispute that he has been treated for his prostate cancer.

In opposition, Plaintiff asserts that Defendants repeatedly delayed his medical treatments because treatments had to be approved by ADC. But there is no evidence that Vinluan or Schriro engaged in any conduct causing delays after Plaintiff was seen by Drs. White and Whaley in February 2006. Plaintiff offers no evidence that Vinluan was involved in Plaintiff's medical treatment after November 2005 or that Schriro delayed approval of treatment. See Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976) (to have a valid claim under § 1983, a plaintiff must demonstrate that he suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant).

Finally, although Plaintiff alleges pain and a recurrence of cancer in 2007, there is no evidence in the medical records of a recurrence of cancer, and the medical records do not clearly demonstrate that either Plaintiff's pain or any recurrence of cancer was the result of

---

[6] Plaintiff argues that Vinluan noted that Plaintiff was to be seen the week after Vinluan reviewed the test results.

a delay caused by Vinluan. Summary judgment is appropriate when a party fails to make a showing sufficient to establish the existence of an element essential to his case and on which he would have the burden of proof at trial. Celotex Corp., 477 U.S. at 322-23. Here, Plaintiff has the burden of proof on causation—he must prove that any delay that occurred as a result of Vinluan's conduct was the cause of Plaintiff's injuries—and expert medical testimony is generally required to establish proximate cause. See Gorney v. Meaney, 150 P.3d 799, 804 (Ariz. App. 2 Div. 2007) (citing Gregg v. Nat'l Med. Health Care Servs., Inc., 699 P.2d 925, 928 (Ariz. App. 2 Div. 1985). To the extent that the medical records might support Plaintiff's position, they require interpretation by a medical expert, and it was incumbent upon Plaintiff to provide an affidavit or deposition of an expert to establish causation. See Hutchinson v. United States, 838 F.2d 390, 393 (9th Cir. 1988) (granting summary judgment against a plaintiff who relied only on her own allegations and conclusory statements that defendants had been negligent and who failed to provide affidavits or depositions of experts). Plaintiff fails to provide such expert evidence.

Likewise, although Plaintiff alleged in his unverified complaint that he needed an operation and chemotherapy and radiation treatments, the medical records do not clearly show that this was the result of a delay caused by Vinluan, as opposed to the unfortunate result of Plaintiff's prostate cancer. Again, the medical records do not clearly support Plaintiff's position on causation, and Plaintiff does not provide expert testimony on this essential element of his claim. Therefore, summary judgment is appropriate. See id.

**IT IS ORDERED:**

(1) Defendants' Motion for Summary Judgment (Doc. #22) is **granted,** and the action is terminated. The Clerk of Court must enter judgment accordingly.

///
///
///
///
///

(2) All pending motions are **denied** as moot.

DATED this 30th day of June, 2008.

_____
James A. Teilborg
United States District Judge

- 9 -